## Proctor & Schwartz, Inc. *v.* Cleveland Lumber Company, Appellant.

13

Argued December 6, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*Matthew M. Strickler,* with him *Ballard, Spahr, Andrews & Ingersoll,* for appellant.

*Ward T. Williams,* with him *Patrick T. Ryan,* and *Drinker, Biddle & Reath,* for appellee.

OPINION BY JACOBS, J., April 3, 1974:

In this suit on a contract we are asked to determine whether the Pennsylvania courts may obtain in personam jurisdiction over a Georgia corporation which entered into a contract of purchase with a Pennsylvania corporation. The court below held that the Georgia corporation had sufficient minimum contacts with Pennsylvania to justify the exercise of in personam jurisdiction by the Pennsylvania courts. We agree.

On March 19, 1969, after extensive negotiations in Georgia and by mail and over the telephone, appellant, a Georgia corporation, signed a contract while in Georgia for the purchase and construction of lumber drying equipment and related materials. This contract was ac-

cepted and executed by appellee, a Pennsylvania corporation, on March 25, 1969, in Philadelphia, Pennsylvania. Under the terms of the contract Pennsylvania law applies to the agreement and governs its construction and interpretation. Appellant, Cleveland Lumber Company [hereinafter Cleveland], as purchaser agreed that title to the equipment was to be retained by appellee, Proctor & Schwartz, Inc. [hereinafter Proctor], until the purchase price was paid, and further agreed to bear the risk of loss on the equipment shipped by appellee.

Alleging certain defects in the manufacture and installation of the materials purchased, Cleveland refused to make further installment payments to Proctor. Proctor instituted this action on March 9, 1973, to recover from Cleveland the balance due on the purchase price and other related expenses. Service was made upon the Secretary of the Commonwealth of Pennsylvania under Pennsylvania's "long-arm" statute. Act of November 15, 1972, P. L. 1063, No. 271, §§8301 et seq., eff., February 13, 1973, 42 Pa. S. §§8301 et seq. (Supp. 1973-74).[1] Cleveland then filed preliminary objections to the complaint alleging that it was a nonresident corporation which was not doing business in the Commonwealth, thus raising a question of jurisdiction. The court overruled the objections and this appeal followed.

The pertinent facts show that Cleveland (1) maintains no offices in Pennsylvania, (2) has no interest in any real or personal property in Pennsylvania, (3) has not acquired with the exception of the instant transaction any materials, supplies, or financing, or services from any business entity located in this state, (4) has

---

[1] Although the cause of action arose prior to the effective date of this statute, procedural matters relating to service are governed by the law existing at the time the action is commenced. *Wenzel v. Morris Distrib. Co.*, 439 Pa. 364, 266 A.2d 662 (1970) ; *accord, Kilian v. Allegheny County Distribs.*, 409 Pa. 344, 185 A.2d 517 (1962) ; *Alloway v. Wain-Roy Corp.*, 53 F.R.D. 85 (E.D. Pa. 1971).

no agents, representatives, or employes in Pennsylvania, (5) has never had any employes, officers, or other individuals representing appellant physically present in Pennsylvania for business purposes, and (6) with the exception of the instant transaction had had no business contacts with Pennsylvania.

Pennsylvania's recently enacted "long-arm" statute is expressly intended to extend the jurisdiction of the courts of this Commonwealth to the fullest extent permitted by the Fourteenth Amendment. The pertinent section is §8309(b) which reads as follows: "(b) Exercise of full constitutional power over foreign corporations.—In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States." This 1972 statute is but the latest step in the evolution of the Pennsylvania "long-arm" statute. The corporate "long-arm" statute, as amended in 1963, restricted the reach of the state courts by limiting the definition of "doing business." "Doing business," the jurisdictional prerequisite, was defined as: "[t]he entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts . . . ." Act of May 5, 1933, P. L. 364, §1011(C), *as amended,* 15 P.S. §2011(C), *repealed,* Act of November 15, 1972, P. L. 1063, No. 271, §5. Under that statute, jurisdiction could only be predicated upon a finding that the foreign corporation had "entered" into the Commonwealth by the physical presence of the corporation's agents or property. *See Rufo v. Bastian-Blessing Co.,* 405 Pa. 12, 173 A.2d 123 (1961); *Cecere v. Ohringer Home Furni-*

*ture Co.,* 208 Pa. Superior Ct. 138, 220 A.2d 350 (1966);
*Optico Corp. v. Standard Tool Co.,* 285 F. Supp. 46
(E.D. Pa. 1968).

In 1968 this requirement of actual corporate pres-
ence was deleted as a criterion of "doing business" and
the statute, as amended, provided that the shipping of
merchandise directly or indirectly into or through the
Commonwealth would be considered the doing of an
act within the Commonwealth. Act of May 5, 1933,
P. L. 364, §1011(C), *as amended,* Act of July 20, 1968,
P. L. 216, §54, 15 P.S. §2011(C), *repealed,* Act of No-
vember 15, 1972, P. L. 1063, No. 271, §5. However, this
statute was still interpreted to require either a series of
acts or a single act with the intention of initiating a se-
ries of acts. *See Gorso v. Bell Equip. Corp.,* 476 F.2d
1216 (3d Cir. 1973); *Aquarium Pharmaceuticals, Inc.
v. Industrial Pressing & Packaging, Inc.,* 358 F. Supp.
441 (E.D. Pa. 1973).

The 1972 amendments to the Pennsylvania "long-
arm" statute seek to remove all Pennsylvania statutory
and, therefore, decisional impediments to the exercise
**of in personam** jurisdiction over foreign corporations.
The statute reinforced through express language the
judicially stated public policy of Pennsylvania to ex-
tend in personam jurisdiction "to the full measure con-
sistent with due process standards." *Aquarium Phar-
maceuticals, Inc. v. Industrial Pressing & Packaging,
Inc.,* supra at 444; *Scafati v. Bayerische Motoren
Werke Ag,* 53 F.R.D. 256 (W.D. Pa. 1971); *cf. Wenzel
v. Morris Distrib. Co.,* supra. Although the statute re-
tains the requirement of "doing business" as a jurisdic-
tional trigger, the addition of the new section 8309(b),
quoted supra, is clearly intended to liberalize Pennsyl-
vania's position. Under this section those contacts suf-
ficient to satisfy the constitutional requirements of due
process are also sufficient to satisfy the "doing busi-
ness" requirement of Pennsylvania law. Thus, for pur-

poses of in personam jurisdiction over unregistered foreign corporations the evolution of the Pennsylvania "long-arm" statute has now become coexistent with the evolution of substantive jurisdictional due process as expressed by the United States Supreme Court.

In the first landmark case of in personam jurisdiction the Supreme Court rejected fictional jurisdictional bases such as presence and implied consent,[2] and held that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

In *McGee v. International Life Insurance Co.,* 355 U.S. 220 (1957), the Supreme Court in establishing the breadth of the due process clause held that the exercise of jurisdiction based upon the issuance of a single insurance contract in the forum state was not constitutionally impermissible. But a year later the Court suggested that the due process clause requires a defendant to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

These decisions provide only a framework under the broad formula of "fair play and substantial justice" and a determination of whether or not the "minimum contacts" of a foreign corporation with a particular state are sufficient to make the corporation constitutionally amenable to process in that state must inevitably be made on an ad hoc case-by-case basis and not by the application of a mechanical rule. *Campbell v. Triangle Corp.,* 336 F. Supp. 1002 (E. D. Pa. 1972).

---

[2] *See Developments in the Law—State Court Jurisdiction,* 75 Harv. L. Rev. 909 (1960).

However, we can find certain guidelines which aid in the factual analysis necessary to make the determination of whether the requisite "minimum contacts" are present in a given case. First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* supra. Secondly, the cause of action must arise from defendant's activities within the forum state. *See Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir. 1968); *Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F. Supp. 550 (D. Conn. 1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington,* supra; *see Southern Mach. Co. v. Mohasco Indus., Inc.,* supra; *see also In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir. 1972); *Kourkene v. American BBR, Inc.,* 313 F.2d 769 (9th Cir. 1963).

This Court has no difficulty in finding that the first element relating to the purposeful doing of an act within the Commonwealth has been satisfied. The defendant voluntarily entered into a contract with a Pennsylvania corporation which contract was to be governed by Pennsylvania law.[3] When obligations entered into by a foreign corporation have a realistic economic impact on the commerce of this Commonwealth and where

---

[3] The law relating to whether or not risk of loss has passed in the forum state has been cited as a desirable example of a type of predictable standard by which parties might assess the jurisdictional consequences of their acts. *Agrashell, Inc. v. Bernard Sirotta Co.,* 344 F.2d 583 (2d Cir. 1965) (concurring-dissenting opinion). The risk of loss in the instant contract rested upon the appellant corporation. Although we do not view this factor as sufficient in itself to confer jurisdiction, it may well be sufficient to satisfy this first analytical requirement.

the defendant should reasonably have foreseen that the transaction would have consequences in this Commonwealth the defendant has purposefully availed itself of the privilege of acting within the Commonwealth. *See Southern Mach. Co. v. Mohasco Indus., Inc.,* supra; *cf.* Royce and Mason, *Non-Resident Jurisdiction in Business Litigation,* 53 Chi. B.R. 100 (1971).

The second analytical step requires only that the cause of action arise from the defendant's activities within the forum state. The mere fact that the defendant availed itself of the privilege of doing business in Pennsylvania will not support a cause of action which is unrelated to the defendant's activities in this state. We find in the instant case that the plaintiff's cause of action arose directly from the defendant's acts within this state. The activity which satisfies the "purposefully availed" test above is the entering into contractual obligations. The cause of action arises from the breach of those same obligations. The entering into commercial obligations and the breach of those obligations in the forum state provides the necessary jurisdictional relationship.

A finding that the first two steps have been satisfied, however, cannot conclude the jurisdictional analysis. The most significant element yet remains: Will the exercise of jurisdiction in this particular case be fair and reasonable under the circumstances? The conclusion of this issue necessarily involves a consideration of the interests of the Commonwealth in this action. It cannot be disputed that this Commonwealth has an interest in resolving a suit brought by one of its residents. *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.,* supra; *Lebowitz v. Forbes Leasing & Fin. Corp.,* 326 F. Supp. 1335 (E.D. Pa. 1971), *cert. denied,* 409 U.S. 843 (1972); *see Thompson v. Ecological Science Corp.,* 421 F.2d 467 (8th Cir. 1970). Additionally, Cleveland entered into a contract which called

for substantial production of goods in this state and which involved substantial commerce within this state. However, jurisdiction cannot be based solely on a quantitative economic impact combined with a substantial interest, for due process requires that the exercise of jurisdiction be fair and reasonable with regard to the particular defendant involved.

Examining the nature of defendant's conduct in this case we find that it was not a passive purchaser which blandly submitted to the mandates of a foreign seller. Rather, Cleveland conducted extensive and active negotiations with Proctor, and succeeded through the exercise of its own economic power in obtaining concessions in the form contract provided by Proctor. "To the extent the buyer vigorously negotiates, perhaps dictates, contract terms . . . and otherwise departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over [it] disappears." *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* supra at 233. Moreover, although Cleveland conducts an essentially localized operation it remains a commercial enterprise which continually moves in a modern business world. As such it should reasonably have anticipated that a failure to make the installment payments on its obligation would have consequences in this state and could result in its being called to defend itself in the state whose laws governed the contract. Additionally, nowhere in the record does it appear that it would be physically or financially impossible for Cleveland to defend itself in this state. Mere inconvenience to the defendant is not sufficient to deny plaintiff the forum of his choice. *Weinberger v. Retail Credit Co.,* 345 F. Supp. 165 (E.D. Pa. 1972) ; *Philadelphia v. Emhart Corp.,* 317 F. Supp. 1320 (E.D. Pa. 1970).

We, therefore, hold that under the facts of this case the exercise by Pennsylvania courts of in personam ju-

risdiction over the appellant does not violate due process requirements. This decision is in concert both with the expressed intent of the Pennsylvania legislature and the recent trend of decisional law. *See, e.g., McCrory Corp. v. Girard Rubber Corp.*, 225 Pa. Superior Ct. 45, 307 A.2d 435 (1973) (noting the more liberal standards established by the United States Supreme Court decisions); *Mackensworth v. American Trading Transp. Co.*, 367 F. Supp. 373 (E.D. Pa. 1973) (isolated and single act within Commonwealth is sufficient, standing alone, to confer jurisdiction); *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.*, supra (isolated introduction of defective goods is sufficient); *Smiley v. Gemini Inv. Corp.*, 333 F. Supp. 1047 (W.D. Pa. 1971) (sales to distributor); *see also Strick Corp. v. Cravens Homalloy (Sheffield) Ltd.*, 352 F. Supp. 844 (E.D. Pa. 1972); *Gorso v. Bell Equip. Co.*, supra; *Benn v. Linden Crane Co.*, 326 F. Supp. 995 (E.D. Pa. 1971); *Scafati v. Bayerische Motoren Werke Ag*, supra. "[T]he traditional notions of fair play and substantial justice . . . must be defined in light of the constitutional, economic, and social realities of the 1970's and not of an earlier decade in our history." *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.*, supra at 445.

Our decision today should not be interpreted as a precedent which will subject any foreign corporation to the jurisdiction of our courts. We hold today only that where a foreign corporation purposefully avails itself of the privilege of acting within this Commonwealth by entering with a Pennsylvania corporation into a commercial contract which is executed in Pennsylvania and governed by Pennsylvania law, which contract the foreign corporation may reasonably anticipate will have a substantial economic impact within this Commonwealth; and where the cause of action arises directly out of the foreign corporation's act; and where the foreign corpo-

ration, rather than maintaining the role of passive purchaser, actively negotiates the terms of the contract; and where the foreign corporation may reasonably anticipate the possibility of being called to defend an action in this Commonwealth, that the exercise of jurisdiction by the courts of this Commonwealth does not offend our sense of fair play and equal justice. *See O'Hare Int'l Bank v. Hampton,* 437 F.2d 1173 (7th Cir. 1971).

Having concluded that jurisdiction is constitutionally permissible under §8309(b), we need not reach the question of whether Cleveland by entering into a contract to be governed and interpreted by the laws of Pennsylvania has voluntarily submitted to the jurisdiction of the Pennsylvania courts. *See Continental Bank v. Brodsky,* 225 Pa. Superior Ct. 426, 311 A.2d 676 (1973).

Order affirmed.