## Faust v. Davenport

*Zimmerman, Lieberman & Derenzo*, for plaintiffs.

*Charles L. Casper, Joseph P. Troy* and *Rawle & Henderson*, for defendants.

*Sidney L. Wickenhaver* and *Charles A. Shea, III*, for additional defendant.

PODCASY, *J.*, January 30, 1975—On October 23, 1973, Richard E. Faust and Shirley Faust his wife, filed suit against Davenport, Spector, Steco, East Coast and Cessna, seeking recovery for certain bodily injuries sustained by male plaintiff as a

result of the June 27, 1971, crash of a Cessna airplane at or near the Wilkes-Barre-Scranton Airport at Avoca, Luzerne County, Pa. At the time of the crash, the Cessna was operated by Davenport and male plaintiff, Richard E. Faust, was a passenger therein. Davenport was allegedly operating the plane as an employe of Spector, Steco and/or East Coast, and within the scope of his employment. Cessna was included as an original defendant on the theory that certain defects in manufacture of the aircraft caused the crash, and Carleton -Whitney, which had installed the rear engine of the aircraft roughly six weeks prior to its crash, was subsequently brought in as an additional defendant on the theory of defective installation.

Carleton-Whitney has filed a preliminary objection to the complaint joining it as an additional defendant. The objection is in the nature of a petition raising a question of jurisdiction, and it is to the issue raised by this petition, and by the answer filed thereto, that we must address our attention.

The facts before us are quite narrowly defined by the preliminary objection and the answer thereto. The cause was ordered on for argument on petition and answer by the moving party, Carleton-Whitney, by praecipe filed October 4, 1974. That being the case, all averments of fact responsive to the petition and properly pleaded in the answer are deemed admitted, pursuant to Pa. R.C.P. 209: Harrington v. Romano, 18 D. & C. 2nd 412 (1959). The averments in the petition which have been specifically denied or which are deemed to have been specifically denied by a demand for proof made in conformity to Pa. R.C.P. 1029(c) raise issues of fact which, if necessary to the court's determination, may be resolved by the taking of further evidence: Pa. R.C.P. 1028(c).

Turning our attention to the pleadings, we find that the only averments of additional defendant's petition which are admitted are those set forth in paragraphs 1 and 12 of the petition, as follows:

"1. Additional Defendant, Carleton-Whitney Aero Service, Inc., is a Massachusetts corporation with its office and place of business at Mansfield Airport, Mansfield, Massachusetts.

"12. On or about May 7, 1971 at the request of original defendant Saul Spector, Additional Defendant performed certain repair and maintenance work on a Cessna Super Skymaster, Model 337, Registration No. N-6313-F. As part of said work, it installed a factory reconditioned engine in said aircraft. All of said work was performed at Mansfield Airport, Mansfield, Massachusetts. The aircraft was delivered to Mansfield Airport by a pilot employed by Mr. Spector for the purpose of having said work performed, and at the conclusion of said work, it was picked up by the pilot employed by Mr. Spector and was flown away."

In addition to the above-admitted averments of the petition, certain averments set forth in paragraphs 2 and 12 of the answer must also be deemed admitted, as follows:

"2. . . . Additional Defendant, Carleton-Whitney Aero Service, Inc., knew or should have known that the engine installed in the aircraft in question would be, and in fact was, shipped into the Commonwealth of Pennsylvania.

"12. . . . Additional Defendant knew, or should have known, that the aircraft in question was based in the Commonwealth of Pennsylvania, that the said aircraft would be returned to Pennsylvania after the repairs referred to in Paragraph 12 of the Petition were made, and in fact, was so returned,

and the said engine referred to in Paragraph 12 of the Petition was thus shipped, directly or indirectly, into the Commonwealth of Pennsylvania."

Additional defendant's petition avers in paragraph 7 that "Additional Defendant is not shipping and has not shipped merchandise directly or indirectly into or through the Commonwealth of Pennsylvania." The answer to the petition denies his averment. We therefore have no clear cut admission of shipment of merchandise into Pennsylvania. We have instead what appears to be a dispute over a legal conclusion as to whether the return flight of the Cessna aircraft from Massachusetts to Pennsylvania, with the reconditioned aft engine installed therein, constituted "the shipping [by the additional defendant] of merchandise directly or indirectly into or through this Commonwealth" within the meaning of section 8309(a)(3) of the Pennsylvania "long-arm statute", the Act of November 15, 1972, P.L. 1063, (no. 271), sec. 8309, 42 P.S.§8309, which was in effect when this lawsuit was instituted and which therefore controls the jurisdictional issue before us: Proctor & Schwartz, Inc. v. Cleveland Lumber Co., 228 Pa. Superior Ct. 12 (1974); Benn v. Linden Crane Co., 326 F. Supp. 995 (E. Dist. Pa., 1971).

Despite the existence of this dispute as to what constitutes "shipping" or "shipment" we nevertheless have the essential factual averment of the answer, the truth of which is deemed admitted for purposes of this argument, that additional defendand "knew, or should have known, that the aircraft in question was based in the Commonwealth of Pennsylvania (and) that the said aircraft would be returned to Pennsylvania after the repairs . . . were made." We must decide whether, in such cir-

cumstances, our courts have jurisdiction over a Massachusetts corporation in a lawsuit in which recovery is sought for bodily injuries allegedly caused by negligence of additional defendant in making the installation of the aft engine. We conclude that such jurisdiction exists.

We do not base our conclusion on a finding that the flight of the Cessna from Massachusetts back to Pennsylvania constituted a "shipping of merchandise directly or indirectly into . . . the Commonwealth," within the purview of section 8309(a)(3) of our present "long-arm statute." We instead base our conclusion on the clear intent and purpose of our legislature, as expressed in section 8309(b) of the statute, to extend the jurisdiction of our courts over foreign corporations to the fullest extent possible under the due process clause of the U.S. Constitution.

Section 8309(a)(3), in specifying the "shipping of merchandise . . . into the Commonwealth" as an act which constitutes, for jurisdictional purposes, the doing of business within the Commonwealth by a foreign corporation, clearly contemplates that such "shipping" be done by or at the direction of the foreign corporation which is to be subject to the jurisdiction of our courts. "Shipping" is not a legal word of art, but a commonplace word in the English language which, by standard dictionary definition, is "the act of one that ships," and to "ship" is, by equally standard definition, "to cause to be transported." Webster's Seventh New Collegiate Dictionary (1971). Here we find no act by Carleton-Whitney which caused the Cessna aircraft, with its newly installed aft engine, to be transported from Massachusetts to Pennsylvania. Knapp v. Franklin Motor Coach Co., 365 F. Supp. 305 (W. Dist. Pa.,

1973) failed to find such shipment in a case involving out-of-state motor vehicle repairs. McCrory Corp. v. Girard Rubber Corp., 225 Pa. Superior Ct. 45 (1973), on the other hand, did find such shipment in a case involving the manufacturer of the rubber tips of toy arrows. In McCrory, however, it is clear that defendant corporation did in fact "cause" its product to be transported into the channels of commerce. The same cannot be said of Carleton-Whitney on the facts now before us.

In concluding that due process is not violated by subjecting Carleton-Whitney to our jurisdiction, we confine ourselves strictly to the facts before us. Our conclusion here, involving repairs to an aircraft, is not meant to be extended by any necessary implication to a case involving repairs to a motor vehicle, where we might or might not be inclined to limit jurisdiction to a neighboring state, as suggested in Knapp v. Franklin Motor Coach Co., supra. We are taking into consideration the fact that aircraft are the swiftest mode of modern transportation, covering in an hour what it takes many hours to cover by motor vehicle. Nor is our conclusion here, involving repairs to an aircraft which was delivered from Pennsylvania to Massachusetts "for the purpose of having said work performed," meant to be extended to a case involving emergency repairs in Massachusetts to a Pennsylvania based aircraft. We are taking into consideration the fact the Cessna aircraft here involved was flown from Pennsylvania to Massachusetts and back again, not on some matter of business or pleasure wholly unrelated to Carleton-Whitney, but for the specific purpose of enabling Carleton-Whitney to install a factory reconditioned aft engine, and that the alleged subsequent failure of this very engine caused

or contributed to causing the injuries sustained by male plaintiff in the Avoca, Pennsylvania, crash.

We are impressed here by the fact that Carleton-Whitney knew or should have known that the aircraft in question was based in Pennsylvania and that the aircraft would be returned to Pennsylvania following repairs. This fact very clearly distinguishes the case now before us from the cases presented for decision in Knapp v. Franklin Motor Coach Co., supra, and Lawson v. U-Haul Company, 336 F. Supp. 186 (E. Dist. Tenn., 1971)

The question involved in due process is essentially one of fairness. There must be certain minimum contacts with the forum state so that traditional notions of fair play and substantial justice are not offended: Int'l. Shoe Company v. Washington, 326 U.S. 310 (1945). It must be reasonable to require the particular foreign corporation to defend itself in the local forum and there must be some act by which the foreign corporation purposely avails itself of the privilege of conducting activities within the state, thus invoking the benefits and protections of its laws: Hansen v. Denckla, 357 U.S. 235 (1958). Here Carleton-Whitney voluntarily entered into dealings with a Pennsylvania resident under circumstances where it was clearly forseeable that the dealings could later have consequences within Pennsylvania. If the aft engine were to fail following its installation, such failure, and any resultant crash, would normally be more likely to occur in the airspace over Pennsylvania than in the airspace over any other region in view of the fact that the aircraft in question was, and was known to be, Pennsylvania based. We conclude that Carleton-Whitney, by undertaking to repair a Pennsylvania owned and Pennsylvania based air-

craft flown from Pennsylvania to Massachusetts for the specific purpose of having such repairs made, purposely availed itself of the privilege of conducting activities within Pennsylvania. We find it arising by necessary implication from the admitted facts that the aircraft here involved would not have been flown from Pennsylvania to Massachusetts for the specific purpose of having its aft engine replaced in the absence of some basic preliminary communication between the parties relating to the availability of a replacement engine, the capability of Carleton-Whitney to remove and replace the engine, the suitability of the delivery date of the aircraft to Massachusetts, the cost of the work to be done, etc. By participating in such communication with its Pennsylvania customer in matters relating to delivery of the aircraft to Massachusetts for repairs, we are satisfied that Carleton-Whitney must have purposely availed itself of the privilege of conducting activities within Pennsylvania within the intent and meaning of Hansen v. Denckla, supra.

Pennsylvania has a legitimate interest in safeguarding the rights of its citizens and it is, in our view, not unreasonable for Pennsylvania to expect out-of-state corporations which involve themselves in commercial transactions with citizens of Pennsylvania to defend themselves in Pennsylvania against lawsuits arising directly out of such transactions. The trend in Federal court decisions for many years has been to expand state jurisdiction because of the increasing nationalization of commerce and because modern methods of transportation make it less burdensome to defend suits in another state: McGee v. Int'l. Life Ins. Co., 355 U.S. 220 (1957). To shift jurisdiction in this instance from Pennsylvania to Massachusetts would

merely shift the inconvenience from additional defendant to original defendants, Davenport, Spector, and Steco. We see no virtue in such a shift: Proctor & Schwartz, Inc., v. Cleveland Lumber Co., 228 Pa. Superior Ct. 12 (1974); Aquarium Pharmaceuticals v. Industrial Pressing & Packaging, Inc., 358 F. Supp. 441 (E. Dist. Pa., 1973).

We recognize fully that in asserting jurisdiction over additional defendant joined herein, we are extending our jurisdiction to or reasonably close to the fullest extent permissible under due process. Our legislature has expressly mandated that our jurisdiction be thus extended, so as to afford the citizens of our Commonwealth the fullest possible protection of our laws. We, therefore, enter the following

## ORDER

The preliminary objections filed by Carleton-Whitney Aero Service, Inc., are hereby dismissed and said additional defendant is hereby ordered to file an answer to the complaint of Charles A. Davenport et al. within 20 days after date of receipt of a copy of this order.