INPACO, INC., Plaintiff,

v.

McDONALD'S CORPORATION, Defendant.

Civ. A. No. 74–1251.

United States District Court, E. D. Pennsylvania.

Jan. 9, 1976.

Alan Kahn, Philadelphia, Pa., for plaintiff.

John R. McConnell, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

Rather than "doing it all for you," McDonald's Corporation claims in a motion now before the court that it does nothing for anybody in Pennsylvania. Believing its ad men have assessed the situation more accurately than its lawyers, I deny McDonald's motion to dismiss this diversity action for lack of jurisdiction.

The plaintiff, Inpaco, Inc., instituted suit against McDonald's Corporation for breach of an alleged contract under the terms of which the defendant agreed to purchase a food sauce dispensing system to be designed by plaintiff for use in McDonald's popular fast-food restaurants. When defendant sought dismissal of the complaint pursuant to Fed.R.Civ.Proc. 12(b)(2), its motion was denied. In response to defendant's request to reconsider, I vacated the original order of dismissal and the parties proceeded with discovery aimed at the jurisdictional issue. Discovery having been completed, the motion to dismiss is before me once again.

McDonald's Corporation is incorporated under the laws of Delaware and has its executive offices and principal place of business in Oak Brook, Illinois. Inasmuch as McDonald's Corporation is not licensed or qualified to do business in Pennsylvania, service of process in this action was carried out pursuant to the Commonwealth's "long-arm" statute, 42 P.S. § 8302 and Fed.R.Civ. Proc. 4(e). Section 8302 provides that a non-qualifying foreign corporation which does any business in Pennsylvania is conclusively presumed to have designated the Department of State as its agent for accepting service of process in any action arising in this Commonwealth. For a definition of the conduct which constitutes doing business under § 8302 reference must be made to § 8309. The latter section, in pertinent part, provides:

§ 8309. Acts affecting jurisdiction

(a) *General rule.*—Any of the following shall constitute "doing business" for the purposes of this chapter:

(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.

(5) The ownership, use or possession of any real property situate within this Commonwealth.

(b) *Exercise of full constitutional power over foreign corporations.*—In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States.

The plaintiff advances three arguments in support of its contention that this court has jurisdiction over the defendant. First, it is argued that the defendant itself has had sufficient contacts with Pennsylvania to come within the definition of "doing business" in § 8309(a). Second, the plaintiff contends that the defendant was doing business in Pennsylvania through subsidiary corporations which acted as its "alter-ego" and that the defendant thereby became subject to in personam jurisdiction under § 8309(a). Lastly, the plaintiff claims that the defendant is subject to the jurisdiction of this court under § 8309(b). Because I find the defendant's own contacts with Pennsylvania to be sufficient to confer jurisdiction in this court under either § 8309(a) or § 8309(b), it is unnecessary to consider plaintiff's alter ego theory.

Although the record[1] before me contains a wealth of information concerning the manner in which the defendant conducts most of its extensive business in Pennsylvania through its two wholly owned subsidiaries, McDonald's Systems, Inc. and Franchise Realty Interstate Corp., in view of the basis of my decision, the only relevant facts are these. The alleged contract which is the subject of this litigation was entered into by the parties on March 27, 1972. The record contains no indication of where the contract was made, but it called for the plaintiff, whose principal place of business is Allentown, Pennsylvania, to develop and produce a system of dispensing food sauces which would be suitable for use by a fast food restaurant chain. Thus, the parties must have envisioned that at least a substantial portion of the contract would be performed in Pennsylvania. In fact, the affidavit of William C. Christine, president of plaintiff, states that the agreement provided that all the work other than on-site testing was to be accomplished at plaintiff's plant in Allentown. The Christine affidavit also states that there was considerable correspondence between the representatives of the defendant in Oak Brook, Illinois, and Christine in Allentown concerning the agreement and its performance in Allentown. The defendants have not controverted any of these allegations. In addition, it is undisputed that after the formation of the contract on at least two occasions, January 11, 1973, and February 1, 1973, a representative of the defendant met with representatives of the plaintiff in Allentown. Finally, representatives of the defendant have made certain "minimal" business trips into Pennsylvania and have had certain "minimal"[2] contacts in Pennsylvania with a Philadelphia meat supplier, although none of these activities had any connection with the contract involved in the instant suit.

▆▆▆ I am satisfied that defendant's contacts with Pennsylvania are sufficient to satisfy the requirements of Pennsylvania's

---

1. The record consists, *inter alia,* of the complaint, plaintiff's three sets of interrogatories and defendant's answers thereto, the deposition of Mr. H. Carl Childs, affidavits of Mr. William C. Christine and Mr. Burton D. Cohen, and the motions and briefs of the parties.

2. Although the defendant characterizes these contacts with Pennsylvania as "infrequent" and "sporadic," Brief for Defendant at 12, it states that more specific information concerning the number of meetings or trips cannot be supplied, since no records of them were kept by defendant. See Answers to Interrogatories Nos. 74 and 81.

long-arm statute. In *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 323 A.2d 11 (1974), it was held that § 8309(b) gave Pennsylvania courts jurisdiction over a Georgia corporation whose sole contact with the Commonwealth was a contract that it had made with a Pennsylvania corporation. After tracing the evolution of Pennsylvania's long-arm statute, the court explained the effect of § 8309(b) of the 1972 amendments on the "doing business" test of the present and past versions of the statute.

Although the statute retains the requirement of "doing business" as a jurisdictional trigger, the addition of the new section 8309(b), quoted supra, is clearly intended to liberalize Pennsylvania's position. Under this section those contacts sufficient to satisfy the constitutional requirements of due process are also sufficient to satisfy the "doing business" requirement of Pennsylvania law. Thus, for purposes of in personam jurisdiction over unregistered foreign corporations the evolution of the Pennsylvania "long-arm" statute has now become coexistent with the evolution of substantive jurisdictional due process as expressed by the United States Supreme Court.

228 Pa.Super. 12, 323 A.2d 11, 14. Since *Proctor* makes it clear that whatever contacts are sufficient to satisfy due process under § 8309(b) also constitute "doing business" in Pennsylvania under § 8309(a), it is unnecessary to analyze the defendant's activities separately with respect to each of these two sections of the statute. Section 8309(b) also eliminates the need to engage in the type of dual-tiered analysis which has typically been used in deciding questions of personal jurisdiction. Instead of first determining whether a foreign corporation's contacts with the forum fall within the terms of the applicable statute, and, if so, then determining if the statute as so applied comports with due process, courts in Pennsylvania may now proceed directly to the constitutional issue.

■ In order to exercise in personam jurisdiction over a foreign corporation due process requires that it have sufficient contacts with the forum state that requiring it to defend a suit there "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). Whether or not such contacts exist in a particular case must be determined on an *ad hoc* basis by a factual evaluation of the nature and quality of the foreign corporation's activities. *Benn v. Linden Crane Co.,* 370 F.Supp. 1269, 1277 (E.D.Pa.1973); *Proctor,* supra, 323 A.2d at 11.

■ In *Proctor,* Judge Jacobs identified three relevant guidelines which aid in making the factual evaluation of each case. First is the requirement of *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958), that the defendant have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." This requirement was satisfied in *Proctor* by the defendant's having contracted with a Pennsylvania corporation and having agreed that the matter was to be governed by Pennsylvania law. In the instant case the defendant also entered into a contract with a Pennsylvania corporation. The contract between Inpaco and McDonald's was to be performed almost entirely in Pennsylvania and thus there can be no question that the defendant could reasonably have foreseen that it would have a "realistic economic impact on the commerce of this Commonwealth." *Proctor,* supra, 323 A.2d at 15. While there is no indication that the contract in this case was "made"[3] in Pennsylvania or that it was to be governed by Pennsylvania law, I do not believe that these represent significant differences in terms of the economic reality rationale adopted by the *Proctor* court, in view of the

---

**3.** The *Proctor* court did not specifically rely on the fact that the contract there had been "made" in Pennsylvania. However the facts state that the acceptance took place in Pennsyl- vania and under familiar contract principles this would be the place where the contract was made. See *Millar Bros. & Co. v. Armour and Co.,* 144 F.Supp. 857, 859 (E.D.Pa.1956).

fact that substantial performance of the contract was to take place in Pennsylvania. Furthermore, in *M & N Meat Company v. American Boneless Beef Corp.*, 380 F.Supp. 912, 915–16 (W.D.Pa.1974), Judge Snyder rejected an attempt by the defendants to distinguish the case before him from *Proctor* on the grounds that the contract involved there had not been made in Pennsylvania. I share his view. The minimum contacts doctrine of *International Shoe* hailed the development of a functional approach to questions of personal jurisdiction which should not be disparaged by the subtle niceties of the law of contracts.

The second *Proctor* guideline requires that the cause of action arise from the defendant's activities within the forum state.[4] This requirement is also satisfied in the instant case. Here, among other things, the activity which satisfies the "purposefully availed" test is, as in *Proctor*, the entering into contractual obligations. And, also as in *Proctor*, the cause of action here arises from the breach of those same obligations.

The final and most important guideline of *Proctor* requires a determination as to whether the exercise of jurisdiction over the defendant under the circumstances of the particular case is fair and reasonable. This determination should be made objec-

tively, but with reference to the particular defendant involved in the case. *Proctor*, supra, 323 A.2d at 16. Although the defendant in *Proctor* conducted an "essentially localized operation" in Georgia, *id.*, the court found this third requirement satisfied by the defendant's exercise of its economic power through active negotiations with the plaintiff. The court cited *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 233 (6th Cir. 1972) for the proposition that:

> To the extent the buyer vigorously negotiates, perhaps dictates, contract terms . . . and otherwise departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over [it] disappears.

Here, the complaint and the uncontroverted affidavit of Mr. Christine indicate that the contract resulted from active arms-length bargaining between the parties. Moreover, considering economic realities, it seems unlikely that a corporation the size of McDonald's could be dictated to at the bargaining table. This is especially true where, as here, the contract involves the development of a system to meet the particular requirements of the defendant. Furthermore, far from being "essentially localized," the business of McDonald's Corporation is nationwide in scope.

**4.** The court apparently drew this requirement from that portion of § 8302(a) which states that the section applies "in any action arising within this Commonwealth." There seems to be some confusion with respect to the meaning of the quoted phrase. On the one hand, the *Proctor* opinion indicates there is an absolute requirement that in every case the cause of action must arise from the defendant's activities within the forum state. If this is what the court meant to say, the opinion conflicts with § 8309(b)'s mandate that jurisdiction be expanded to due process limits because it is undoubtedly true that in some instances a foreign corporation's contacts with the forum may be so substantial that it is constitutionally amenable to suit there on *any* cause of action. On the other hand, in *Glen Knit Industries, Ltd. v. E. F. Limme & Son, Inc.*, 384 F.Supp. 1176, 1177 (E.D.Pa.1974), Judge Higginbotham, relying on the Third Circuit's interpretation of *Myers v. Mooney Aircraft, Inc.*, 429 Pa. 177, 240 A.2d 505 (1967) in *Siders v. Upper Mississippi Towing Corp.*, 423 F.2d 535, 537 n. 3 (3d Cir. 1970),

held that the quoted phrase "means nothing more than that the cause of action is filed in Pennsylvania." While Judge Higginbotham unquestionably interpreted *Siders* correctly, I believe that this construction of § 8302 is overly broad because there may be occasions when a foreign corporation's contacts with the forum are so minimal that it can constitutionally be held amenable to suit there only on causes of action that arise directly out of its forum-related activities. In view of § 8309(b), I believe that, rather than attempting any hard and fast definition of the "action arising" requirement of § 8302, it is more appropriate to recognize that the due process clause envisions a flexible standard with regard to the nexus which must exist between forum-related activity and the cause of action in which jurisdiction is sought to be secured. As the foreign corporation's contacts with the forum increase, the need for a close relationship between those contacts and the cause of action is lessened. See generally 2 *J. Moore, Federal Practice* § 4.25[5] (1974); cf. *Bork v. Mills*, 329 A.2d 247 (Pa.1974).

**420**

Bearing in mind that "the due process clause defines a rather low threshold of state interest sufficient to justify exercise of the state's sovereign decisional authority with respect to a given transaction," *Aldens, Inc. v. Packel*, 524 F.2d 38, 43 (3d Cir. 1975), I have no difficulty in holding that subjecting defendant to in personam jurisdiction in Pennsylvania is fully consistent with due process requirements. The defendant's contacts with Pennsylvania in this case are, in fact, more extensive than those of the defendant in *Proctor* and other cases which have upheld the exercise of in personam jurisdiction over foreign corporations. In *Mackensworth v. American Trading Transp. Co.*, 367 F.Supp. 373 (E.D.Pa. 1973), Judge Edward R. Becker of this court lyrically held that the single act of taking on a load of cargo at a Pennsylvania port was sufficient to confer in personam jurisdiction over a shipping company. And in *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.*, 358 F.Supp. 441 (E.D.Pa.1973), Judge Charles R. Weiner of this court reached a similar result where the defendant's only contact with Pennsylvania was a single shipment of defective goods into the Commonwealth.[5] In the case at bar not only did McDonald's Corporation voluntarily enter into a transaction with a Pennsylvania corporation, which is the equivalent of the situations presented in *Proctor, Mackensworth,* and *Aquarium Pharmaceuticals,* but it also had certain other business contacts with the Commonwealth. Accepting defendant's contention that these other contacts were minimal, they nonetheless make a stronger case for exercising in personam jurisdiction than was present in the cases just cited.

For the reasons stated above the motion to dismiss must be denied.

---

**5.** The result I reach here is not inconsistent with *Aamco Automatic Transmissions, Inc. v. Tayloe*, 368 F.Supp. 1283 (E.D.Pa.1973). In *Aamco,* the defendant's sole contacts with the forum were the constructive commission of the tortious acts in Pennsylvania. Here, the defendant's contacts with the forum are substantially greater.