Mary LIEB, Trustee of the Trust U/W/O Joseph Lieb, Deceased,

v.

AMERICAN PACIFIC INTERNATIONAL, INC., et al.

Civ. A. No. 79-1755.

United States District Court, E. D. Pennsylvania.

April 24, 1980.

James E. Butler, Duane, Morris & Heckscher, Philadelphia, Pa., for Mary Lieb et al.

Harvey S. Kronfeld, Hudson, Wilf & Kronfeld, Philadelphia, Pa., for API and the Raydons and the Blairs.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

In 1972 and 1973, plaintiffs, whom I shall refer to collectively as the Lieb Group,[1] purchased limited partnership interests in some oil and gas drilling programs operated by defendant, American Pacific International, Inc. (API). For reasons not disclosed of record, plaintiffs became disenchanted with their investment. Consequently, on September 28, 1977, the parties entered into another contract by which API agreed to repurchase the interests held by the Lieb Group in API gas and oil drilling programs. In this transaction, API made partial payment in cash and issued some Series Installment Notes for the balance still due on the purchase price. As a part of the contract, the four individual defendants, Gerald T. and Alyda L. Raydon and W. P. and Dorothy C. Blair, who are the principal stockholders of API, signed a security agreement pledging a substantial number of shares of their API common stock as collateral for API's notes in favor of plaintiffs.

It is the alleged breach of the terms of both the contract and the security agreement which is the subject of the present suit. The complaint consists of two counts: the first seeks money damages for API's supposed failure to make the installments payments due in September, 1978, under the terms of the contract of sale, and the second requests an injunction compelling the individual defendants to deposit additional shares of API stock as collateral as allegedly required by the security agreement.

---

1. The plaintiffs are: Mary Lieb, Trustee of the Trust U/W/O Joseph Lieb, deceased, Mary Lieb, individually, Nathaniel Lieb, Harvey and Bernice Rosenbluth, Richard and Shirley Dellheim, Bernard Sterling, and Edward K. Huber.

Defendants have filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b) on the grounds that the Court lacks *in personam* jurisdiction over the individual defendants and that venue is not proper in the Eastern District of Pennsylvania. Defendants' motion requests, in the alternative, that I transfer the case to the Central District of California under 28 U.S.C. § 1404(a). Because I find both that I have personal jurisdiction over all the defendants and that venue lies in this district, I will deny the motion to dismiss. Similarly, I must deny the motion to transfer since defendants have not met their burden to establish that the balance of interests weighs in favor of moving this case to the Central District of California.

## I. *PERSONAL JURISDICTION*

It is undisputed that the individual defendants in this case, Mr. and Mrs. Raydon and Mr. and Mrs. Blair, do not live within the territorial limits of the Eastern District of Pennsylvania; they are in fact all residents of the Los Angeles area. The Pennsylvania "long-arm" statute, 42 Pa.C. S.A. § 5322(b), provides jurisdiction over nonresident corporations and individuals "to the fullest extent allowed under the Constitution of the United States."[2] In order for a court to exercise jurisdiction over a non-resident defendant without violating the due process guarantees of the Constitution, it must be established that the defendant has had such "minimum contacts" with the forum that permitting the suit to go forward there would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted).[3]

As the United States Supreme Court has observed in its most recent discussion of *in personam* jurisdiction, the concept of minimum contacts performs a dual function. It protects the defendant's interest in not being required to defend a case in a distant forum as well as ensures that the States do not attempt to exercise authority beyond the limits imposed by their status as coequal sovereigns in a federal system. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). The determination of whether a defendant has had sufficient contacts with the forum requires an analysis of the quality and nature of the contacts. There must be evidence that defendant's relation to the forum makes the exercise of personal jurisdiction over the party reasonable; for example, his conduct or connection should be such that he should have anticipated being haled into court there. *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). Moreover, constitutional standards demand a showing that the defendant has purposefully availed himself of the privileges of conducting activities within the forum, thus invoking the benefits and protection of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

In the case now before me, the individual defendants argue that the facts demonstrate that they have not had sufficient contacts with the Eastern District of Pennsylvania to justify this Court's exercise of jurisdiction over them. Although they concede that Mr. Raydon and Mr. Blair attended business meetings, concerning the contract, in Philadelphia, the defendants maintain that the two men appeared solely in their capacity as officers of API. They further allege that Mrs. Raydon and Mrs. Blair have had no contacts whatsoever with the Eastern District of Pennsylvania.

Plaintiffs, not surprisingly, dispute defendants' rendition of the facts. They state

---

**2.** Plaintiffs specifically allege that the Court has *in personam* jurisdiction over defendants pursuant to 42 Pa.C.S.A. § 5322(a)(1)(i) or (ii) because they have transacted business in Pennsylvania by the doing of an act or series of acts "for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object."

**3.** Due process also requires that the defendant be given adequate notice. *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 313–14, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). In the present case, defendants have not alleged inadequacy of notice.

that Messrs. Blair and Raydon attended the meetings in Philadelphia on behalf of themselves and their wives as well as on the part of the company. Additionally, plaintiffs contend that Mr. Bruce Jeffers, a Los Angeles attorney, appeared at the contract's "closing", held in Philadelphia on September 28 and 29, 1977, as a representative of both API and the individual defendants. It is further urged that the terms of the contract for repurchase and the accompanying security agreement reveal other significant connections between the individual defendants and this forum.

By the security agreement, the Blairs and Raydons pledged, as collateral for the outstanding debt of API to the Lieb Group, their common stock in API. Appointing the Fidelity Bank of Philadelphia as their agent, the four individual defendants delivered, via Mr. Jeffers, the first installment of their API stock certificates to be placed in an escrow account at that bank. (Attach. C to plaintiffs' memo, ¶¶ 9, 16 Sec. Agr.) The security agreement further provided that should the market value of the API stock decline below certain levels, the securing parties, the four individual defendants, would deliver additional shares to be deposited as collateral in the escrow account at Philadelphia's Fidelity Bank. (Attach. C to plaintiff's memo, ¶ 11(b), Sec.Agr.) Paragraph 21 of the security agreement states that the agreement "shall be deemed a contract made under and shall be construed in accordance with and governed by the laws of the Commonwealth of Pennsylvania."

It is settled that a plaintiff seeking relief in federal court has the burden of alleging and proving jurisdiction. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 1913 n. 28, 60 L.Ed.2d 508 (1979); *McNutt v. McHenry Chevrolet Co.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). However,

when deciding a motion to dismiss for lack of personal jurisdiction, the Court must consider the pleadings and affidavits in the light most favorable to the non-moving party. *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 193 (E.D.Pa.1974). The evidence now before the Court on this motion shows that the nature of the individual defendants' contacts with the Eastern District of Pennsylvania make exercise of personal jurisdiction over them by this Court reasonable and that their conduct demonstrates that they have availed themselves of the benefits and protection of the law of this forum. The allegations against the Raydons and Blairs found in the complaint concern only the purported breach of the security agreement; they are undisputably parties to that agreement. As previously described, under the terms of the agreement, the individual defendants appointed a Philadelphia bank as their agent, delivered stock to that agent in Philadelphia to be held in escrow here and stipulated that Pennsylvania law should govern the interpretation of the contract and security agreement.[4] In addition, Messrs. Raydon and Blair came to Philadelphia on several occasions to negotiate the contract and security agreement. Bruce Jeffers, a representative of all the defendants, appeared in Philadelphia for the closing of the transaction and delivered some of the collateral as well as the security agreement which had already been executed by the defendants. Given the language of the agreement and the conduct of the individual defendants, it is clear that they "could reasonably anticipate being haled into court" in the Eastern District of Pennsylvania. *Shaffer v. Heitner*, 433 U.S. at 216, 97 S.Ct. at 2586.

## II. *VENUE*

Venue in a diversity action is governed by 28 U.S.C. § 1391(a), which provides as follows:

4. In addition to the general stipulation that Pennsylvania law would govern any interpretation of the contract, the security agreement also states that, should the defendants default, the plaintiffs would have all the rights and remedies provided a secured creditor under the

Pennsylvania Uniform Commercial Code, and the defendants would use their best efforts to "cause" API to file a registration statement covering the collateral under the "blue sky" laws of Pennsylvania. (¶¶ 13(b) and 14(a), Sec. Agr.)

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

Defendants argue that the Court should dismiss the complaint for want of proper venue in the Eastern District of Pennsylvania since none of the criteria of § 1391(a) have been met; that is, neither do all of the plaintiffs nor all of the defendants live here, and the claim did not arise in this district. Plaintiffs rejoin that venue is proper because the claim did arise in the Eastern District of Pennsylvania.

It is true that venue would not lie in this district on the basis of the residence of the parties. According to the complaint, five of the plaintiffs are residents of the Philadelphia area while the other three live in Florida.[5] The corporate defendant, API, is a corporation organized and existing under the laws of Nevada with its principal place of business in Los Angeles, California. Also, the four individual defendants live in the Los Angeles area. It is defendants' contention that proper venue lies in the Central District of California, which is the federal district court located in Los Angeles, because all the defendants live there and the claim arose there.

Having considered the arguments made by the parties in support of their respective positions as well as the various affidavits submitted, I find that the claim did arise in the Eastern District of Pennsylvania and consequently that venue is proper here. Both sides have argued that in a diversity action the issue of where a claim arose for purposes of venue is to be determined by the law of the state in which the federal court is located. Prior to the recent decision of the United States Supreme Court in

*Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), it was unclear whether state or federal law governed the interpretation of the meaning of "claim arose" in a diversity case. Although the commentators generally rejected the view that venue was a substantive right to be decided by state law under the principles set forth in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), some federal courts adopted the theory.[6] *See, e. g., Wahl v. Foreman*, 398 F.Supp. 526, 529 (S.D.N.Y. 1975); *Philadelphia Hous. Auth. v. American Radiator & Standard San. Corp.*, 291 F.Supp. 252, 260 (E.D.Pa.1968).

■ Even though the case does not involve the question of venue in the diversity context, the language of a footnote in *Leroy v. Great Western United Corp., supra*, would appear to resolve the debate over whether state or federal law controls the interpretation of the meaning of where the claim arose. The Court, citing both Moore's *Federal Practice* and Wright, Miller and Cooper, stated:

> The Court of Appeals properly concluded that the determination of where 'the claim arose' for purposes of federal venue under § 1391 is a federal question whose answer depends on federal law.

99 S.Ct. at 2717, n. 15.

The federal courts have developed several different standards for determining where a claim arose for purposes of venue; the most widely accepted is the "weight of the contacts" test first announced in *Philadelphia Hous. Auth. v. American Radiator & Standard San. Corp., supra.* In that antitrust case, Judge John W. Lord stated:

> It is submitted that 'where the claim arose' should be dependent upon where the contacts weigh most heavily. A 'weight of the contacts' test would enable

---

**5.** According to the affidavit of Nathaniel Lieb, the three plaintiffs who are listed in the complaint as residents of Florida also live in Philadelphia for at least part of the year. (¶ 4, Lieb affidavit).

**6.** Both Moore's Federal Practice (Vol. 1, ¶ 0.142[5.–2] at 1423–35, 2d Ed. 1977) and

Wright, Miller and Cooper's Federal Practice and Procedure (Vol. 15, § 3803 at 11–13, (1976)) have taken the position that the determination of where the claim arose in a diversity action is a matter of federal statutory interpretation.

venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meetings took place in a district and it was significant and substantial element of the offense, then venue would lie in that district. Conversely, if one insignificant sale was made in a district, as set forth above in the hypothetical, venue would not lie there. Similarly, if a meaningless and insignificant meeting of the conspirators took place in a certain district, venue would not exist there either. 291 F.Supp. at 260–61.

■■■■■ The parties have presented various affidavits; plaintiffs' affidavits attempt to show that the most significant events or contacts occurred in the Eastern District of Pennsylvania while defendants' try to establish that they took place in the Central District of California. Bearing in mind that the burden is on the plaintiff to prove that his or her choice of venue is proper,[7] I find that plaintiffs in this case have shown that the most significant contacts have been with the Eastern District of Pennsylvania.[8] As I have already outlined in my discussion of the jurisdictional question, the only business meetings concerning the contract for repurchase and the accompanying security agreement took place in Philadelphia. (¶¶ 4, 5, and 9, Bonovitz affidavit). A representative of the defendants, Mr. Jeffers, brought the executed copies of the contract and security agreement as well as the collateral to Philadelphia for the closing. (¶ 5, Bonovitz affidavit). The API stock certificates belonging to the Raydons and Blairs were deposited in an account at the Fidelity Bank here. Subsequent to the closing, the individual defendants have continued to send more stock certificates to defendants' attorneys in the Eastern District of Pennsylvania. (¶ 8, Bonovitz affi-

davit). The contract states that API appoints the Secretary of the Commonwealth of Pennsylvania as its agent for service of process. (Attach. C, ¶ 9 of the contract). In addition, provisions of both the contract and the security agreement designate Pennsylvania law as the law to be applied to any controversy arising out of the repurchase arrangement. Under the principles of *Leroy, supra,* the fact that Pennsylvania law is to be applied weighs heavily in favor of finding venue in this district. In *Leroy,* the Supreme Court noted that "federal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere." 99 S.Ct. at 2718.

Given these facts, I find that the contacts weigh most heavily in the Eastern District of Pennsylvania. Accordingly, I deny the motion to dismiss for lack of proper venue.

### III. *TRANSFER*

Defendants have moved alternatively for a transfer of the case, pursuant to 28 U.S.C. § 1404(a), to the Central District of California. Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Defendants, using essentially the same arguments as were made in support of their motion to dismiss for lack of proper venue, urge that the convenience of the parties and witnesses and the interests of justice favor transfer to Los Angeles.[9] Those arguments are: 1) all of the defendants live in the Los Angeles area; 2) most of the defense's "potential" witnesses, such as attorneys Bruce Jeffers and Rodney C. Hill and an as yet unnamed expert witness who will testify on the value of the API stock,

---

7. *Hawkins v. National Basketball Association,* 288 F.Supp. 614 (W.D.Pa.1968).

8. In the *Leroy* case, *supra,* the Supreme Court acknowledges that in some cases, albeit the unusual ones, there is more than one district in

which the claim can be said to have arose. 99 S.Ct. at 2718.

9. It is undisputed that the case could have been brought in the Central District of California since all of the defendants reside there.

live there; 3) the pertinent documents, such as the API stock, the records of API's stock transfer agent and other records of the corporate defendant are located in the Central District of California and 4) the conduct challenged by this suit took place in Los Angeles.

Plaintiffs, of course, dispute that such a transfer would serve either the convenience of the parties or the interests of justice. In support of their view, they allege: 1) all of the eight plaintiffs live in Philadelphia at least part of the year; 2) important potential witnesses, including the attorneys who represented plaintiffs in the negotiations with defendants and the Fidelity bank official in charge of the escrow account established by the security agreement, live in the Eastern District of Pennsylvania; and 3) the documents relevant to plaintiffs' case are found here. Also, plaintiffs urge that since API stock is traded over the counter nationally, a Philadelphia stockbroker would be as competent as one from California to testify about the value of the API stock.

 In determining the merits of a § 1404(a) motion to transfer, the plaintiff's choice of a proper forum is entitled to "paramount consideration". *Shutte v. Armco Steel Corporation*, 431 F.2d 22, 25 (3d Cir. 1970). Moreover, the moving party bears the burden of showing that a balancing of the interests weighs in favor of the transfer. Unless that balance weighs strongly in favor of the defendant, the plaintiffs' choice of forum should not be disturbed. *Ibid*. After considering the facts of this case, I find that the defendants have not met their burden.

 The instant case does not present "interest of justice" questions as they have been defined by the courts. *See Bartolacci v. Corp. of Presiding Bishop, etc.*, 476

F.Supp. 381, 382 (E.D.Pa.1979). Consequently, the decision of whether to transfer the matter to the federal district court in Los Angeles depends on the weighing of conveniences to the parties which would result from such a move. In this case, the balancing process is not complicated. It is clear that should the case proceed here, the defendants and their witnesses would be inconvenienced while plaintiffs and their witnesses would be equally disadvantaged if the case were to be transferred to California. Regardless of whether the case stays in Philadelphia or is moved to Los Angeles, one side must bear the cost and burden of litigating a case several thousand miles from home.[10]

 The facts of this case present what has been described as an "equitable standoff"; both parties are likely to suffer roughly equal inconvenience. Under such circumstances, the transfer to another forum would merely shift the inconvenience from the defendants to the plaintiffs. Consequently, the plaintiffs' choice of forum should not be disturbed. *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.*, 358 F.Supp. 441, 446 (E.D. Pa.1973). Another factor weighs in favor of allowing the case to proceed in Philadelphia. By their contract, the parties have agreed that Pennsylvania law should govern in this action. Under the principles set forth in *Leroy v. Great Western United Corp., supra*, this Court is better able to interpret Pennsylvania law than is a federal court sitting in California. 99 S.Ct. at 2718. *See also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

Briefly in their reply memorandum and again at oral argument,[11] defendants raised another point which they believe necessitates a transfer of this case to the Central

---

**10.** As to the question of the location of the relevant documents, neither side has stated with any specificity which documents will be required at trial. Each side claims that the crucial records are located in the forum which it favors. Consequently, under the principles of *Shutte, supra*, defendants have not sustained their burden to show that as to the location of

the pertinent documents, the balance of conveniences weighs in favor of transfer.

**11.** At oral argument, I said that defendants could submit a supplemental memorandum, which they have done, on the issue of whether plaintiffs' attorneys should be disqualified.

District of California. They contend that since members of Duane, Morris and Heckscher, the law firm now representing plaintiffs, must testify as witnesses for their clients at trial in this case, the Code of Professional Responsibility requires that the law firm be disqualified.[12] It is true that Disciplinary Rule 5–102 of the Code states that, except in certain limited circumstances, a lawyer should disqualify herself and her firm from any case which requires that she or a member of her firm testify as a witness for the party she represents. According to defendants, the appropriate resolution to the problem of disqualification in the present case is a transfer because if the case were moved to California, plaintiffs would have to hire new lawyers anyway.

After considering the affidavits and the arguments submitted by the parties, I find that the issue of the disqualification of the Duane, Morris firm is not relevant to the defendants' motion to transfer. The illogic of defendants' argument on this question is self-evident. Even if it were to be determined that the facts of this case required the disqualification of the Duane, Morris firm, the most expeditious way of dealing with the necessity that plaintiffs find new counsel is not to transfer the case to a new district. It is as easy for plaintiffs to hire new lawyers in Philadelphia as it would be to hire lawyers in California. Furthermore, if the case were transferred to the Central District of California, defendants also might be required to appoint new attorneys to represent them because their present California counsel, Messrs. Jeffers and Hill, are potential defense witnesses. Therefore, as to the disqualification question, the balance of conveniences weighs in favor of allowing the case to proceed in Philadelphia.

At this time, both because the defendants have not filed a motion to disqualify and at this stage of the proceedings such a motion would be premature, I will not decide the question of whether the law firm of Duane, Morris and Heckscher should be disqualified as counsel for the plaintiffs. I note, however, that in their memorandum in opposition to the motion to dismiss, plaintiffs do state that three members of the Duane, Morris firm are potential witnesses on behalf of the plaintiffs.[13] Under the terms of the Code of Professional Responsibility, DR 5–102, an attorney may not testify on behalf of his client except under certain circumstances, none of which exist in this case. Thus, if during the course of discovery in this case it becomes clear that any member of the Duane, Morris firm will testify on behalf of their clients, the law firm will have to decide to act either as an advocate or as a witness. *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corporation, Inc.*, 546 F.2d 530, 538 (3d Cir. 1976); *J. D. Pflaumer, Inc. v. U. S. Dept. of Justice*, 465 F.Supp. 746, 748 (E.D.Pa.1979).

For all of the foregoing reasons, I enter the following order denying both defendants' motion to dismiss and their alternative motion to transfer the case to the Central District of California.

---

**12.** It is alleged that some members of the Duane, Morris firm will have to testify at trial in this case because those lawyers represented plaintiffs during the negotiations for and consummation of the contract and security agreement which are at issue in this lawsuit.

**13.** In a March 24, 1980 letter to the Court, plaintiffs' counsel Michael Baylson, stated that "there is no issue for trial on which the testimony of any lawyer in this firm [Duane, Morris] will be relevant."