**ERIE PRESS SYSTEMS, A DIVISION OF EFCO, INC., Plaintiff,**

v.

**SHULTZ STEEL COMPANY and Bucyrus-Erie Company, Defendants.**

**Civ. A. No. 82–66 Erie.**

United States District Court, W. D. Pennsylvania.

Oct. 14, 1982.

**1216**

Edward W. Goebel, Jr., Erie, Pa., for Erie Press Systems.

Jon Hogue, Titus, Marcus & Shapira, Pittsburgh, Pa., for Shultz Steel.

John H. Riordan, Jr., Rose, Schmidt, Dixon & Hasley, Pittsburgh, Pa., for Bucyrus-Erie.

## OPINION

MENCER, District Judge.

Erie Press Systems, a division of EFCO, Inc., a Pennsylvania corporation having its principal place of business in Erie, Pennsylvania, has filed a two-count complaint in the Western District of Pennsylvania against Shultz Steel Company, a California corporation, having its principal place of business in South Gate, California, and against Bucyrus-Erie Company, a Delaware corporation, having its principal place of business in South Milwaukee, Wisconsin. Erie Press Systems (Erie Press) is a manufacturer of steam drop hammers. Shultz Steel Company (Shultz) is a producer of metal forgings. Bucyrus-Erie Company (Bucyrus-Erie) manufactures iron castings in a facility located in the Western District of Pennsylvania. In the first count of the complaint, Erie Press alleges that Shultz owes Erie Press $68,000 as final payment for a drop hammer purchased from the plaintiff. The second count is brought under the provisions of the Declaratory Judgment Act, 28 U.S.C. § 2201, whereby Erie Press seeks a declaration of the rights of the parties under various contracts, all of which are related to the manufacturer of the hammer Erie Press sold to Shultz. Subject matter jurisdiction is proper in this Court by virtue of 28 U.S.C. § 1332(a)(1) which grants the district courts original jurisdiction over all civil actions where the amount in controversy exceeds $10,000 and the parties are citizens of different states.

Erie Press filed its complaint on March 16, 1982. In response, Bucyrus-Erie filed an answer and counterclaim on April 30, 1982. Shultz responded on May 3, 1982 by filing a motion to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss or transfer because of improper venue. Both Erie Press and Shultz have submitted briefs and affidavits in support of their positions regarding the defendant's motion.

## VENUE

We will first consider defendant's motion to dismiss for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) or, alternatively, to transfer the case to the Southern District of California[1] pursuant to 28 U.S.C. § 1404(a).[2] Shultz does not, as it cannot, seriously contend that Erie Press chose a

---

1. The Court is hard pressed to find any connection between the parties to this lawsuit and the Southern District of California, and therefore believes the defendant to be seeking a transfer to the Central District of California. *See* 28 U.S.C. § 84(c), (d). Nevertheless, the Court's ruling on the transfer motion removes the question, before it is asked, of which district the defendant desired to have the case transferred.

2. 28 U.S.C. § 1404(a) provides

   For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

venue which is technically improper. As noted above, Erie Press is a Pennsylvania corporation with its principal place of business in the Western District of Pennsylvania. Subject matter jurisdiction is grounded solely on diversity. Section 1391(a) of Title 28 of the United States Code provides that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may ... be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." Venue for this lawsuit brought where the plaintiff resides is entirely proper under Section 1391(a).

The determination of whether a transfer motion pursuant to 28 U.S.C. § 1404(a) should be granted is one within the sound discretion of the Court. The district court must consider both the convenience of transfer and the fairness of such transfer before ruling on a motion based on Section 1404(a). In so doing, the court must keep in mind that the purpose of the section, as interpreted by the United States Supreme Court, is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense...." *Van Dusen v. Barrack,* 376 U.S. 612, 617, 643, 84 S.Ct. 805, 809, 822, 11 L.Ed.2d 945 (1964); *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26, 27, 80 S.Ct. 1470, 1474, 1475, 4 L.Ed.2d 1540 (1960).

■ The burden to establish facts supporting a motion to transfer is on the moving party. The moving party must establish that a balancing of proper interests weighs heavily in favor of the transfer. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). The United States Supreme Court in *Gulf Oil Co. v. Gilbert,*[3] during a discussion of the doctrine of forum non conveniens, which is applicable to a decision under 28 U.S.C. § 1404(a), delineated factors to be considered in the determination of whether a transfer would best serve the disparate interests of all the interested individuals in a lawsuit. Four

main factors appear to have emerged through the interpretation of *Gulf* by courts in this circuit. The factors are (1) plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the cost of obtaining attendance of willing witnesses; and (4) practical considerations which will make trial of a case easy, expeditious and inexpensive. *Zerance v. William Harvey Research Corporation,* 401 F.Supp. 804, 806 (E.D.Pa.1975).

First, as noted above, the filing of this lawsuit in the Western District of Pennsylvania is entirely proper under 28 U.S.C. § 1391(a). This Court gives great weight to the plaintiff's legally sound choice of filing this lawsuit in the Western District. *Shutte v. Armco Steel Corp., supra.* Second, we note that the defendants have identified only one potentially relevant piece of evidence which is located outside the Western District of Pennsylvania. That evidence is the drop hammer itself. The Court can discern no reason why photographs would not be adequate to present a view of the hammer to the finder of fact if that becomes necessary during the course of the trial.

The third factor the Court must consider when weighing a motion to change venue is the cost to the respective parties of obtaining attendance of willing witnesses. The Court notes that Shultz has failed to address this factor beyond the bald assertion in its brief that "all of Shultz Steel's witnesses are [in California]" In contrast, Erie Press, while alleging generally that all of its witnesses are located in the Western District, indicates by way of affidavit that Satish Kumar, an employee of Erie Press at the time the hammer was manufactured, is a witness whose "testimony would be vital to a clear understanding of this dispute." The affidavit further states that Mr. Kumar resides outside the Western District of Pennsylvania, but within 100 miles of the Federal Courthouse in Erie, Pennsylvania. This same affidavit identifies three former employees of Bucyrus-Erie who are familiar

**3.** 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

with the manufacture of the allegedly defective portion of the drop hammer. All three of these individuals live in the Western District of Pennsylvania.

Finally, aside from being the situs of the hammer and being located in the state of incorporation and principal place of business of one of the three parties, the Central District of California[4] has no special nexus with the activities surrounding this lawsuit. Among other things, the hammer was manufactured in the Western District of Pennsylvania through the combined efforts of a Pennsylvania corporation with its principal place of business in the Western District and another corporation with a manufacturing site in the Western District. As a result of the location of manufacture, many pieces of relevant information and many potential witnesses may be presumed to be more easily and inexpensively obtained in the Western District of Pennsylvania.

■ Therefore, the defendant, Shultz, has not submitted documentation containing facts sufficient to overcome its burden of proof regarding the factors to be weighed when ruling on a Section 1404(a) motion to transfer.

For the foregoing reasons, the defendant's Motion to Transfer is denied.

## IN PERSONAM JURISDICTION

■ Having answered the question of whether venue is proper in the Western District of Pennsylvania affirmatively, we must now turn to a discussion of the defendant's contention that valid in personam jurisdiction cannot be obtained over it in this district. The amenability of a foreign corporation to a diversity action in a federal court is determined by applying the law of the state where the court sits. The only limitations on application of the forum state's law are those imposed by constitutional guarantees of due process. *Galaxy International, Inc. v. White Stores, Inc.*, 88 F.R.D. 311, 314 (W.D.Pa.1980). The applicable law controlling the exercise of in personam jurisdiction over nonresident corpo-

rate defendants by federal district courts sitting within Pennsylvania is found at Section 5322 of Title 42 of the Pennsylvania Consolidated Statutes, *Galaxy, supra; Donner v. Tams-Witmark Music Library, Inc.*, 480 F.Supp. 1229, 1231–32 (E.D.Pa.1979). The Pennsylvania jurisdictional statute, in effect, adopts the United States Supreme Court's expressions of substantive jurisdictional due process as the law to be applied by courts sitting in Pennsylvania. Subsection (b) of 42 Pa.C.S.A. § 5322 provides that "jurisdiction ... shall extend to all persons ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."

■ The predecessor to the "long-arm" statute currently in effect in Pennsylvania was found at 42 Pa.C.S.A. § 8301 et seq. The current long-arm statute found at 42 Pa.C.S.A. § 5321 et seq. is essentially a recodification and expansion of Section 8301. Section 8301 was interpreted as to its applicability to a foreign corporation by the Superior Court of Pennsylvania in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974). It is fair to characterize *Proctor & Schwartz* as the singular authority on application of the Pennsylvania long-arm statute in cases such as the one now before the Court. Indeed, as was stated by the late Judge Snyder of this Court, "[n]o discussion by this Court of in personam jurisdiction over foreign corporations would be complete without reference to *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.* [citation omitted]." *Follansbee Metals Co., Inc. v. John T. Clark & Son of New Hampshire, Inc.*, 387 F.Supp. 574, 579 (W.D.Pa.1974).

The Court in *Follansbee*, following the lead of the Court in *Proctor & Schwartz*, referred to the three landmark cases which delineate modern due process standards for the exercise of valid in personam jurisdiction: *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95

**4.** See Footnote 1.

(1945); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The starting point for any analysis of the limitations on a court's valid exercise of in personam jurisdiction must be *International Shoe.* In that decision, the Supreme Court laid the foundation upon which all subsequent due process decisions regarding in personam jurisdiction have been built.

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'.

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

This concept of minimum contacts serves to protect two related, but distinguishable, interests. It protects the defendant against the burdens of litigation in a forum that has little or no connection with that defendant. It also protects the federal system in that it prevents the States from reaching out, through their courts, beyond limits inherent in their status as coequal sovereigns. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

In *McGee v. International Life Insurance Co., supra,* the Supreme Court explained that the minimum contacts theory was justifiable because of the increased use of national transportation and communication lines which resulted in a concomitant decrease in the burden imposed on a party made to defend himself in a state where he engages in economic activity. 355 U.S. at 222–23, 78 S.Ct. at 200–01. The contacts

found to be sufficient to satisfy due process requirements in *McGee* were the sale and delivery of a policy in California by a foreign insurance corporation and the mailing of premiums from California by the insured who remained a resident of California until his death.

*Hanson v. Denckla* further shaped this theory of minimum contacts by adding the requirement that a defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." 357 U.S. at 253, 78 S.Ct. at 1239. In *Hanson,* the unilateral activities in Florida of the settlor of a trust who received income in that state from the trustee, a foreign domiciliary, were not sufficient to establish jurisdiction in Florida over the defendant trustee.

These decisions, although indispensable as landmarks to follow while searching for constitutionally permissible in personam jurisdiction, represent only the beginning of the search. Because these principles represent flexible guidelines, and not a mechanical test, the determination of whether or not "minimum contacts" exist must be made on a case-by-case basis upon application of the facts of the case under consideration.

The facts pertinent to a determination of this motion are as follows. Sometime during 1980, Gordon Shultz, president of Shultz Steel Company, informed the management of Erie Press that Shultz was interested in purchasing a drop hammer to be manufactured by Erie Press. Subsequently, an offer to buy the hammer was mailed by Shultz from California to Erie Press in Pennsylvania. Erie Press agreed to supply Shultz with the hammer and informed Shultz of this decision by way of a letter sent from Erie, Pennsylvania. The letter was received by Shultz in California. This contract, formed in Pennsylvania,[5] resulted

---

**5.** Shultz, through the affidavit of Gordon Shultz, admits it mailed an offer to purchase the hammer to Erie Press in Erie, Pennsylvania. The affidavit further states that Erie Press accepted that offer by return letter sent from Erie, Pennsylvania. Where an offer does not

specify the manner in which the offeree must communicate its acceptance, mailing of the notice of acceptance completes the contract. *Cayuga Construction Corporation v. Vanco Engineering Company,* 423 F.Supp. 1182, 1184

in Erie Press manufacturing a 25,000 pound drop hammer in Erie, Pennsylvania. The total cost of the hammer was $1,148,433.34. In order to complete the hammer, it was necessary for Erie Press to purchase component parts manufactured by Bucyrus-Erie in Pennsylvania. Shultz, in order to facilitate manufacture and to reduce costs, shipped piston rods and rings for use in the hammer from California to Erie Press in Pennsylvania. Upon its completion, representatives of Shultz traveled to Erie, Pennsylvania to inspect the hammer before shipment to California. During the course of the negotiations before contracting for the hammer, and while it was being manufactured, Shultz initiated numerous telephone conversations with Erie Press in Pennsylvania concerning the hammer.

The Court in *Proctor & Schwartz, supra,* established a three-step analysis for determining whether minimum contacts are present in a given case. First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. Second, the cause of action must arise from the defendant's activities within the forum state. And finally, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. [Citations omitted.] 228 Pa.Super. at 19, 323 A.2d at 15.

Shultz purposefully availed itself of the privilege of acting within Pennsylvania when it entered into a contract worth more than one million dollars with a Pennsylvania corporation. The contract was formed in Pennsylvania and is governed by Pennsylvania law. It is worth noting also that the contract called for shipment of the hammer "F.O.B. Erie, PA" with the risk of loss passing to the buyer upon successful delivery by Erie Press to the carrier. 13 Pa.C.

S.A. § 2319(a)(1). "When obligations entered into by a foreign corporation have a realistic impact on the commerce of this Commonwealth and where the defendant should reasonably have foreseen that the transaction would have consequences in this Commonwealth the defendant has purposefully availed itself of the privilege of acting within the Commonwealth." 228 Pa.Super. at 19–20, 323 A.2d at 15.

The second step toward a finding of the minimum contacts necessary to a valid exercise of in personam jurisdiction by this Court is a finding that the cause of action arose from the defendant's activities within Pennsylvania. As in *Proctor & Schwartz,* the activity which satisfies the first step above is the entering into contractual obligations. The cause of action arises out of the failure of the defendant to provide proper payment as required. Payment to Erie Press of Pennsylvania became due as a result of completion of the hammer. The extensive negotiations leading up to formation of the contract in Pennsylvania and the defendant's activities in Pennsylvania concerning the hammer, coupled with the defendant's failure to perform its contractual obligations, provides the necessary jurisdictional relationship. *Follansbee, supra* at 581; 42 Pa.C.S.A. § 5322(a)(1)(i), (iii).[6]

The final step in our analysis is a determination of whether the exercise of in personam jurisdiction by this Court will be fair and reasonable based on the particular circumstances of this case. The contract entered into by Shultz was one which involved the production of a complex piece of machinery requiring the involvement of two separate business facilities located in Pennsylvania. The amount due under the contract evidences its economic impact upon Pennsylvania. As regards the fairness to Shultz of a finding of in personam jurisdic-

---

(W.D.Pa.1976). The contract must be regarded as having been formed in Pennsylvania.

**6.** 42 Pa.C.S.A. § 5322(a) permits the exercise of personal jurisdiction over a corporation transacting business in the Commonwealth. 42 Pa.C.S.A. § 5322(a)(1)(i) includes in the definition of transacting business "[t]he doing by any

person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object. 42 Pa.C.S.A. § 5322(a)(1)(iii) includes in the transacting of business [t]he shipping of merchandise directly or indirectly into or through this Commonwealth."

tion by this Court, several factors weigh in favor of such a finding. The contract itself placed Shultz on notice that the laws of Pennsylvania would be applicable in the event of any dispute. Beyond that, Shultz actively participated in negotiations leading up to formation of the contract and "was not a passive purchaser which blandly submitted to the mandates of a foreign seller." 228 Pa.Super. at 21, 323 A.2d at 16. After formation of the contract, Shultz shipped parts from California into Pennsylvania for inclusion in the hammer. Upon completion of the machine, representatives of Shultz traveled to Pennsylvania to inspect the hammer before shipment out of Pennsylvania. Finally, there is no evidence in the record which indicates that it would be either financially or practically impossible for Shultz to defend in this district. Based on all the acts by Shultz in Pennsylvania regarding the hammer, to require Shultz to defend against its alleged breach in a court sitting in Pennsylvania does not seem to offend any sense of fair play or substantial justice.

We note here that Erie Press has advanced an alternative ground upon which this Court can make a finding that in personam jurisdiction over Shultz exists regardless of the existence or nonexistence of minimum contacts relating to the sale of the hammer. The particular basis for this contention is that Shultz has maintained an ongoing relationship with the Commonwealth of Pennsylvania which is so continuous and pervasive that it would not offend due process standards were this Court to exercise personal jurisdiction. Our findings above eliminate the need for any discussion of the plaintiff's alternate theory for a finding of personal jurisdiction.

The defendant's motion to dismiss for lack of personal jurisdiction is denied.

An appropriate order will issue.