**MANTUA OIL, INC. d/b/a
Seaview Lubricants**

v.

**C.J. MARKETING COMPANY,
Christopher J. Markey and
Wanda Markey, h/w.**

**Civ. A. No. 85–1097.**

United States District Court,
E.D. Pennsylvania.

Nov. 21, 1985.

of the validity of the disaffiliation elections, appear to be better left to the National Labor Relations Board.

David E. Stern, Blue Bell, Pa., for plaintiff.

Robert Igrisan, Farmington, Mich., for defendants.

## OPINION

LUONGO, Chief Judge.

In 1983, plaintiff Mantua Oil, Inc., a New Jersey corporation with its principal place of business in Pennsylvania, and defendant C.J. Marketing Company, a Michigan corporation with its principal place of business in Michigan, entered into an oral agreement concerning the sale and purchase of petroleum products. According to the complaint, Mantua Oil agreed to sell petroleum products to C.J. Marketing on credit. C.J. Marketing agreed to pay for the products after receiving invoices from Mantua Oil. Defendants Christopher and Wanda Markey, both Michigan residents, signed a suretyship agreement making them liable for C.J. Marketing's obligations to Mantua Oil. Plaintiff alleges that defendants have failed to pay for the petroleum products supplied to C.J. Marketing under the oral contract.

Presently before me is defendants' motion to dismiss for lack of personal jurisdiction and for improper venue. Defendants have submitted an affidavit, allegedly signed by Christopher J. Markey, which states that Markey is the principal officer, shareholder and employee of C.J. Marketing and has personal knowledge concerning the business relationship between the parties. The affidavit states that plaintiff initiated the relationship and that all negotiations were conducted over the telephone with the parties remaining in their respective offices. Defendants contend that they have conducted no business in Pennsylvania and could not have foreseen that their oral agreement with plaintiff would subject them to suit in this forum.

The affidavit of John J. Tyrrell, Mantua Oil's Vice President of Marketing, presents a different picture. Tyrrell asserts that Christopher Markey made the first contact between the parties and attended several negotiation sessions in Pennsylvania. Other C.J. Marketing employees also came to Pennsylvania in connection with the negotiations, and the agreements were substantially finalized in Pennsylvania.

Plaintiff has also submitted evidence which raises serious doubts as to the authenticity of Markey's affidavit. William Bonner, Esquire, a member of the bar of the Supreme Court of Pennsylvania, has stated in an affidavit that he was present at an arbitration hearing held in this case on September 20, 1985. Bonner asserts that Patricia Holsomback appeared as a witness for defendants and testified that she has been the sole officer of C.J. Marketing for the last three years. She stated that Markey is not an officer of the corporation as alleged in the affidavit, that the signature appearing on the affidavit is a forgery, and that she had never authorized defendants' attorney to prepare or notarize the document. Defendants have submitted nothing to contradict Bonner's affidavit.

Although the plaintiff bears the burden of establishing that jurisdiction exists, "a plaintiff whose factual record consists only of the pleadings and supporting affidavits need simply establish a *prima facie* case of jurisdiction." *Kyle v. Continental Capital Corp.*, 575 F.Supp. 616, 619 (E.D.Pa. 1983). *See also Pharmaceutical Group Services, Inc. v. National Pharmacies, Inc.*, 592 F.Supp. 1247, 1248 (E.D.Pa.1984). In light of the questions concerning the authenticity and accuracy of defendants' evidence, together with the fact that plaintiff's submissions provide ample support for a conclusion that this is a proper forum, I will deny defendants' motion to dismiss.

If at trial defendants can produce legitimate evidence in support of their factual assertions, plaintiff may be required to bear its full burden of proving jurisdictional facts by a preponderance of the evidence. *See Kyle*, 575 F.Supp. at 619.[1]

Under Fed.R.Civ.P. 4(e), a district court may assert jurisdiction over a nonresident defendant to the extent permitted under the law of the state where the district court sits. Pennsylvania has authorized the exercise of jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b).

The Constitution permits the exercise of jurisdiction over a defendant who has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Pennsylvania courts have established a three-part analysis for determining whether sufficient contacts exist:

> First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. . . . Second, the cause of action must arise from defendant's activities within the forum state. . . . Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable.

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984) (quoting *Proctor & Schwartz v. Cleveland Lumber Co.*, 228 Pa.Super, 12, 19, 323 A.2d 11, 15 (1974)).

Under the facts as presented by plaintiff, these requirements are satisfied in the instant case. By entering into contracts with a corporation centered in Pennsylvania, defendants purposefully availed themselves of the privilege of doing business here. *See, e.g., Erie Press Systems v. Shultz Steel Co.*, 548 F.Supp. 1215, 1220 (W.D.Pa.

1982); *B.J. McAdams, Inc. v. Boggs*, 426 F.Supp. 1091, 1102 (E.D.Pa.1977). Moreover, plaintiff's claims arise out of defendants' contacts with Pennsylvania. The agreements upon which the complaint is based—the oral agreement between Mantua Oil and C.J. Marketing and the suretyship agreement signed by the Markeys—were negotiated and substantially consummated in Pennsylvania. Defendants allegedly breached their agreements when they failed to submit payments due to Mantua Oil in Pennsylvania. *See Kyle*, 575 F.Supp. at 621; *Erie Press Systems*, 548 F.Supp. at 1220.

Finally, if plaintiff's factual assertions are correct, defendants' contacts with this forum are sufficient to make the exercise of jurisdiction fair and reasonable. Christopher Markey, on behalf of C.J. Marketing, initiated the dealings between the parties by contacting Mantua Oil's Pennsylvania offices. Negotiations for the agreement between Mantua Oil and C.J. Marketing were conducted in Pennsylvania, and C.J. Marketing personnel visited Pennsylvania on several occasions in connection with the parties' business transactions. These contacts clearly justify the exercise of jurisdiction over C.J. Marketing. *See, e.g., Pharmaceutical Group Services*, 592 F.Supp. at 1249; *Webb Research Corp. v. Rockland Industries*, 580 F.Supp. 990, 993 (E.D.Pa.1983); *Kyle*, 575 F.Supp. at 621.

Markey also transacted business in Pennsylvania on his own and his wife's behalf when he negotiated the suretyship agreement, which provided for payments to be made to Mantua Oil in Pennsylvania. I conclude that Christopher and Wanda Markey "could reasonably anticipate being haled into [a Pennsylvania] court" in connection with their agreement, and that they are therefore subject to this court's jurisdiction. *Lieb v. American Pacific International, Inc.*, 489 F.Supp. 690, 694 (E.D. Pa.1980).

---

1. I will also reserve for the trial the question of whether sanctions under Fed.R.Civ.P. 11 should

be imposed against defendants and their counsel.

■ Defendants have also moved to dismiss for improper venue. Venue in this diversity case is governed by 28 U.S.C. § 1391(a), which provides that a civil action may be brought "in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." I conclude that venue is proper as to all defendants on the ground that plaintiff's claim arose in this district.

A claim arises for purposes of the venue statute in the district where " 'the contacts weigh most heavily.' " *Lieb,* 489 F.Supp. at 695 (quoting *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252, 260 (E.D.Pa.1968)). *See also Pennwalt Corp. v. Horton Co.,* 582 F.Supp. 438, 440 (E.D. Pa.1984); *B.J. McAdams,* 426 F.Supp. at 1103. Defendants in the instant action reside in the Eastern District of Michigan, and Mantua Oil shipped petroleum products to Michigan under its contract with C.J. Marketing. The bulk of the activities relating to the negotiation and formation of the agreements, however, occurred in Philadelphia and Montgomery County, in the Eastern District of Pennsylvania. The payments due under the agreements were to be sent to plaintiff's offices in the Eastern District of Pennsylvania, and defendants' alleged breaches of contract caused plaintiff to suffer economic loss in this district. Of the possible forums, "the Eastern District of Pennsylvania was the site of the most significant contacts since the operative events which gave rise to plaintiff's cause of action took place here." *Id. See also Pennwalt Corp.,* 582 F.Supp. at 440; *Lieb,* 489 F.Supp. at 696. The claim thus arose here and venue is proper.

Defendants' motion to dismiss is denied.